IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DANIEL F. DEY** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CIVIL NO.: 1:12cv332-HSO-RHW** |
| | § | |
| **STATE FARM MUTUAL** | § | **DEFENDANT** |
| **AUTOMOBILE INSURANCE** | § | |
| **COMPANY** | § | |

<u>MEMORANDUM OPINION AND ORDER GRANTING
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

BEFORE THE COURT is Defendant State Farm Mutual Automobile

Insurance Company's Motion for Partial Summary Judgment [65] seeking judgment

as a matter of law as to Plaintiff Daniel F. Dey's claims for bad faith/punitive

damages and conversion.  Having considered the Motion, Plaintiff's Response [70],

Defendant's Reply [74], the evidence submitted, and relevant legal authority, the

Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's

claims for conversion and bad faith/punitive damages.

I.      <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On October 7, 2009, Plaintiff Daniel F. Dey ("Plaintiff") was involved in an

automobile accident with a City of Gulfport police officer.  Compl. 3 [1-2].  At the

time of the accident, Plaintiff was the named insured on two State Farm Mutual

Automobile Insurance Company ("Defendant") policies bearing policy numbers

0447-373-24E and 0723-023-24B (collectively, "the Policies").  Compl. 2.  The

Policies provided uninsured motorist ("UM") coverage to Plaintiff with a total limit of $100,000.  Dep. of Donald Evans 44:12-45:15 [65-3].

Plaintiff eventually began to develop left shoulder pain and sought medical treatment from Dr. Jeffrey Noblin on October 23, 2009.  Compl. at 4, Ex. "B" to Mot. for Partial Summ. J. 108 of 173 [65-2].  On January 6, 2010, Dr. Noblin released Plaintiff to return to his job as a border patrol agent.  Savoie Report 2 [74-2].  Dr. Noblin ordered an MRI of Plaintiff's left shoulder, which revealed arthrosis in the AC joint of Plaintiff's shoulder.  Ex. "B" to Mot. for Partial Summ. J. 97 of 173 [65-2].  Plaintiff continued to follow-up with Dr. Noblin, and after a May 11, 2010, visit in which Dr. Noblin noted Plaintiff's shoulder appeared to be healing on its own, Dr. Noblin found Plaintiff had reached maximum medical improvement ("MMI") on October 1, 2010.  *Id*., Ex. "B" to Mot. for Partial Summ. J. 15-16 of 173 [65-2].  Dr. Noblin attributed to Plaintiff permanent partial impairment of 2% of his upper extremity and 1% of his body as a whole, and he noted that if pain occurred with an increase in activities, Plaintiff may require a surgical procedure.  Ex. "B" to Mot. for Partial Summ. J. 16 of 173 [65-2].

On March 9, 2010, Dr. Noblin referred Plaintiff to Dr. Charles Winters to have Plaintiff's back pain evaluated.  *Id*.  Dr. Winters noted on April 8, 2010, that a MRI revealed evidence of degenerative disc disease.  Ex. "B" to Mot. for Partial Summ. J. 91 of 173 [65-2].  Dr. Winters' notes of December 8, 2010, reflect that the nerves in Plaintiff's back were healing and that he would not recommend surgery.  Ex. "B" to Mot. for Partial Summ. J. 66 of 173 [65-2].  After a follow-up visit on

March 9, 2011, Dr. Winters observed that Plaintiff was experiencing some hip pain when he wore his gun belt and had pain down his left leg if he stood for too long. Pl.'s Ex. "10" [70-10].  Otherwise, Plaintiff was "doing really fairly well" and should follow-up as needed.  *Id.*

On May 19, 2011, Plaintiff submitted a demand to State Farm for $125,000 to settle claims for UM benefits under the Policies.  Ex. "B" to Mot. for Partial Summ. J. 29 of 173 [65-2].  At that time, however, Plaintiff had not yet exhausted his administrative remedies as required by Mississippi Code § 83-11-103(c)(vi). In a letter dated June 17, 2011, Plaintiff informed Defendant that he had completely exhausted his administrative remedies and renewed his demand for "policy limits" under the Policies.  Ex. "B" to Mot. for Partial Summ. J. 26 of 173 [65-2].

On July 7, 2011, Defendant's claim representative, Donald Evans, prepared an Injury Evaluation Report ("IER").  Pl.'s Ex. "5" [70-5].  The evaluation resulted in a recommendation that the claim be settled and placed Defendant's settlement range between $37,000 and $47,000.  *Id.*  The next day, Defendant offered Plaintiff $37,000 to settle his UM claim.  Pl.'s Ex. "6" [70-6].  In a letter dated July 12, 2011, Plaintiff rejected this initial offer and reiterated his demand for policy limits.  Pl.'s Ex. "7" [70-7].  On August 25, 2011, Defendant increased its offer to settle the UM claim to $45,000.  Pl.'s Ex. "8" [70-8].  While these negotiations were ongoing, Plaintiff and Defendant were also communicating about terms and exclusions contained in the Policies.  Pl.'s Ex. "8" [70-8].  Having not received a definitive answer in response to its $45,000 settlement offer, Defendant contacted Plaintiff on

3

October 20, 2011, to inquire as to Plaintiff's position regarding Defendant's last offer.  Pl.'s Ex. "8" [70-8].

Plaintiff saw Dr. Winters again on November 16, 2011.  Dr. Winters' records indicate Plaintiff was experiencing some pain but there was no need for surgery.  Pl.'s Ex. "10" [70-10].  On February 6, 2012, Plaintiff communicated to Defendant the fact that he was still experiencing pain.  Pl.'s Ex. "10" [70-10].  A manager for Defendant reviewed Plaintiff's claim on February 23, 2011, and Defendant unconditionally tendered to Plaintiff a draft in the amount of Defendant's initial offer of $37,000 because the parties had reached an impasse in their negotiations.  Pl.'s Ex. "11" [70-11], Pl.'s Ex. "12" [70-12].  Defendant further informed Plaintiff that the claim "remain[ed] open subject to a final determination of damages."  Pl.'s Ex. "12" [70-12].

On April 2, 2012, Plaintiff's counsel acknowledged the impasse but demanded payment of an additional $13,000 based on an alleged prior offer of $50,000 and reiterated this demand on April 19, 2012.  Pl.'s Exs. "13" and "14" [70-13] [70-14].  Defendant's claim representative responded on May 2, 2012, that there must have been a misunderstanding because the last settlement offer for $45,000 was not accepted, and Defendant unconditionally tendered its initial offer in recognition of an impasse between the parties.  Pl.'s Ex. "15" [70-15].  On May 4, 2012, Plaintiff's counsel demanded payment of the difference between $50,000 and the $37,000 unconditional tender based upon "previous cases in which [Plaintiff's attorney] has been involved . . . ."  Pl.'s Ex. "16" [70-16].

4

While the parties were in the midst of these exchanges, Plaintiff visited Dr. Noblin again on June 1, 2012.  Dr. Noblin examined Plaintiff and concluded that Plaintiff would need to undergo shoulder surgery consisting of a subacrimonial decompression and an AC joint resection.  Pl.'s Ex. "18" [70-18].  Dr. Noblin attributed the need for this surgical procedure to the October 7, 2009, automobile accident.[1]  *Id.*  Subsequent to this visit, Plaintiff's counsel wrote Defendant on June 12, 2012, once again demanding the $13,000 difference.  Pl.'s Ex. "17" [70-17].  On August 17, 2012, Plaintiff forwarded Dr. Noblin's records reflecting the June 1, 2012, visit and setting forth the plan for performing shoulder surgery, which Dr. Noblin concluded was necessitated by the accident.  Pl.'s Ex. "18" [70-18].

Defendant's internal records indicate that on September 6, 2012, Defendant began to question the mechanics and causation of Plaintiff's shoulder injury based upon its review of Dr. Noblin's records received on August 17, 2012.  Ex. "B" to Mot. for Partial Summ. J. 1 of 173 [65-2].  Plaintiff, however, filed this lawsuit on September 18, 2012.  Ex. "A" to Notice of Removal [1-2].  By letter dated September 27, 2012, Defendant requested that Plaintiff sit for an examination under oath as part of its investigation and pursuant to the terms of the Policies.  Ex. "4" to Reply Br. [74-4].  The next day, Plaintiff's counsel responded offering to let Defendant postpone the EUO until Plaintiff's deposition was taken and enclosing a courtesy copy of the Complaint.  Pl.'s Ex. "19" [70-19].  The Complaint was formally served upon Defendant on October 3, 2012.  Notice of Removal 1 [1].

---

[1] Dr. Noblin performed the surgical procedure on December 28, 2012.  Pl.'s Ex. "20" [70-20].

5

On October 31, 2012, Defendant removed this action from the Circuit Court of Hancock County, Mississippi. *Id.* The case management conference took place on January 24, 2013, following which Plaintiff was to execute a waiver of medical privilege. Case Management Order 3 [7]. From March 14, 2013, to April 8, 2013, the parties informally disputed the terms and breadth of the medical authorization Plaintiff was to provide Defendant. *See* Pl.'s Exs. 27, 28 [70-27] [70-28]. Defendant then retained Dr. Felix Savioe, M.D., to evaluate Plaintiff's medical records. Savoie Report 1 [74-2]. In a report dated July 3, 2013, Dr. Savoie noted that he was unable to determine the etiology of the shoulder surgery and concluded that "any shoulder specialist would be unable to assign the need for surgery" to the automobile accident given the delay between Plaintiff's initial release and the determination that surgery was necessary. *Id.* at 3.

Defendant filed its Motion for Partial Summary Judgment on August 15, 2013. State Farm Mutual Automobile Insurance Company's Mem. Br. in Supp. of Mot. for Partial Summ. J. ("Mot. for Partial Summ. J.") 1 [66]. Defendant asserts that Plaintiff is not entitled to punitive damages as a matter of law because such damages generally are not available on contract claims. *Id.* at 13. According to Defendant, the dispute between Plaintiff and Defendant is a mere "pocketbook dispute," and Plaintiff cannot seek punitive damages because Plaintiff cannot establish Defendant breached the contract either intentionally or through gross negligence. *Id.* Defendant further contends that it is entitled to judgment as a matter of law as to Plaintiff's conversion claim because Plaintiff cannot establish

ownership over the $45,000 settlement offer, which is fundamental to any conversion claim. *Id*. at 7-11.

Plaintiff opposed the Motion relying upon recitations of deposition testimony and almost exclusively on the Fifth Circuit's recent decision in *James v. State Farm Mutual Automobile Insurance Company*, 719 F.3d 447, 451-61 (5th Cir. 2013). Pl.'s Mem. Br. in Supp. of His Opp'n to Def.'s Mot. for Summ. J. 1-11 [71]. Plaintiff reasons that the Fifth Circuit has held that Mississippi law recognizes a cause of action for bad faith denial in circumstances where an insurer merely delays paying a claim without actually denying the claim. *Id*. at 10-11. According to Plaintiff, Defendant's delay in paying the policy limits between July 2011 and the present lacks any arguable reason. *Id*. at 11-13. Plaintiff contends that Defendant's reliance upon the potential causation issues does not constitute an arguable reason for the delay because the very same records Defendant uses to justify the causation dispute are records Defendant initially evaluated to determine if coverage existed. *Id*. at 18-24. Plaintiff surmises that Defendant's failure to request a medical authorization for seventeen months in contravention of its own policy manual and failure to request an independent medical examination were tactics employed to force Plaintiff to accept a "low ball" offer. *Id*. at 24-29. As for his conversion claim, Plaintiff argues that "common sense dictates" that once Defendant offered to settle the claim for $45,000 Defendant was obligated to tender at least that much to Plaintiff whether or not Plaintiff rejected that offer. *Id*. at 33-38.

In reply, Defendant argues that *James* does not constitute settled law because the defendant insurer in that case has a pending petition for rehearing en banc.  State Farm Mutual Automobile Insurance Company's Reply Br. in Supp. of Mot. for Partial Summ. J. ("Reply Br.") 1 [74].  Defendant maintains that even *James* recognizes that Mississippi courts are skeptical of bad faith claims predicated on a delay in payment as opposed to an outright denial.  *Id*. at 1-2. Defendant reiterates its unconditional payment of $37,000 is a sign of its good faith and that the subsequent dispute over whether the additional shoulder surgery is related to the October 7, 2009, automobile accident creates an arguable reason for the delay in further payment.  *Id*. at 3, 8-10.  Defendant further notes that Plaintiff offers no legal authority to support "application of the tort of conversion" where a party rejects the very amount it claims has been converted.  *Id*. at 12.

## II.   DISCUSSION

Because this is a case of diversity jurisdiction, the Court must apply the substantive law of the State of Mississippi. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir.1999); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938).  At the same time, "procedural matters are governed by federal procedural law."  *Kenney v. Trinidad Corp.*, 349 F.2d 832, 837 (5th Cir. 1965).

## A.   Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "There is no genuine dispute if the record, taken as a whole, could not lead a rational trier-of-fact to find for the non-moving party." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013) (citation omitted).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  In deciding whether summary judgment is appropriate, the Court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Where the non-movant bears the burden of proof at trial, the movant may discharge its summary judgment burden by establishing an absence of evidence supporting the non-movant's case.  *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 747 (5th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (internal marks omitted).  The movant "need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting" the non-movant's case.  *Latimer v. Smithkline & French Labs., a Div. of Smithkline Beckman Corp.*, 919 F.2d 301, 303 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 325).  The non-movant must then produce evidence establishing each element for which the non-movant bears the burden of proof at trial.  *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citations omitted).  Otherwise, no genuine issue as to any material fact exists, since a complete failure

9

of proof concerning one element of the non-movant's case necessarily renders all other facts immaterial, such that the movant is entitled to judgment as a matter of law. *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 872 (5th Cir. 1991) (citing *Celotex*, 477 U.S. at 322)).

B.    Plaintiff's Conversion Claim

Plaintiff's conversion claim is unable to withstand summary judgment because Plaintiff cannot establish ownership of a $45,000 offer that Plaintiff initially rejected. "Ownership of the property is an essential element of a claim for conversion." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 68 (Miss. 2004) (citations omitted). An action for conversion will not lie "until the title of the lawful owner is made known and resisted" or the defendant otherwise exercises dominion over the property. *Community Bank, Ellisville, Mississippi v. Courtney*, 884 So. 2d 767, 773 (Miss. 2004) (quoting *Mississippi Moto Fin., Inc. v. Thomas*, 149 So. 2d 20, 20 (Miss. 1963)) (internal marks omitted).

Plaintiff contends his ownership of the $45,000 arises from the fact that Defendant offered that amount in an effort to settle Plaintiff's uninsured motorist claim. Plaintiff's undisputed rejection of that offer, however, precludes any showing that Plaintiff ever owned the $45,000. *See Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185, 1186 (5th Cir. 1981) ("It is fundamental that a contract is formed only upon acceptance of an offer."). Plaintiff has cited no authority to support the proposition that he acquired ownership of the $45,000 merely because it was offered by Defendant in an effort to compromise Plaintiff's

uninsured motorist claim.  The Court is not inclined to recognize a right of ownership under such circumstances.  *See, e.g.*, Fed. R. Evid. 408 (precluding the use of settlement offers to establish the validity of a claim or its amount); *Terry v. Safeco Ins. Co. of Am.*, Civ. No. H-10-0340, 2013 WL 5214315, *5 (S.D. Tex. Sept. 17, 2013) (noting that "[uninsured motorist insurer's] offer to settle by paying a certain amount did not notify the [insured] that it would pay that amount").

Because Plaintiff has not established ownership over the $45,000 offer, Defendant is entitled to judgment as a matter of law on Plaintiff's conversion claim. *See Courtney*, 884 So. 2d at 772-773 (where evidence made clear conversion plaintiff was not the owner of truck and trailer allegedly converted, defendant was entitled to judgment as matter of law on conversion claim).

C.    Plaintiff's Bad Faith/Punitive Damages Claim

To recover punitive damages for delay of payment on an insurance contract, a plaintiff must demonstrate that (1) the insurer lacked a reasonably arguable basis for delaying payment, either in fact or law, and (2) the insurer acted with malice or gross negligence in disregard of the insured's rights.  *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992); *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1095-96 (Miss. 1996).  The first prong requires proof by a preponderance of the evidence, while the second prong requires proof by clear and convincing evidence.  *James*, 719 F.3d at 453.  The question of whether the insurer lacked an arguable basis for denying a claim is an issue of law for the Court.  *Wigginton*, 964 F.2d at 492.

It is well-settled under Mississippi law that "a legitimate pocketbook dispute between" an insurer and its insured is a difference which does not "rise to the level of wanton, gross or intentional conduct in the nature of an independent tort." *State Farm Mut. Auto. Ins. Co. v. Roberts*, 379 So. 2d 321, 322 (Miss. 1980). This doctrine is "equally applicable in personal injury claims[, which] include[] various intangibles such as pain and suffering which render [personal injury claims] much harder to evaluate than a static property damage claim." *Evangelista v. Nationwide Ins. Co.*, 726 F. Supp. 1057, 1060 (S.D. Miss. 1988). An insurer is not rendered "guilty of bad faith denial of a claim simply because an insured believes her claim is worth more than the insurer offers." *Id.*

In *James v. State Farm Mutual Automobile Insurance Company*, the insured was injured in an automobile accident on February 3, 2006. 719 F.3d 447, 449 (5th Cir. 2013). The insured promptly notified State Farm of the accident but sued State Farm after twenty months of delay without State Farm making any tender of UM benefits whatsoever. *Id.* at 455, 460. The district court granted State Farm's motion for summary judgment as to the insured's punitive damages claim after State Farm tendered policy limits to the insured. The insured appealed, contending State Farm's delay in paying UM benefits amounted to bad faith under Mississippi law. *Id.* at 450. The Fifth Circuit divided the thirty month time period between State Farm's receipt of notice of the claim and its tender of policy limits into separate intervals. *Id.* at 454. State Farm argued that it reasonably delayed payment throughout the entire thirty month period because it "was actively

12

investigating the claim . . . ."  *Id*.  After reviewing each interval, the Court of Appeals concluded that there were intervals totaling seventeen months in which State Farm was actively investigating the claim and thus had an arguable reason to delay payment, but that there were thirteen months in which State Farm was not actively investigating the claim and had no arguable reason to delay payment.  *Id*. at 454-60.  For this reason, the Fifth Circuit concluded that the insured's bad faith claim survived summary judgment.  *Id*. at 460.

The sole reason argued for the delay in payment in *James* was that the insurer was "actively investigating" the claim.  In this case, Defendant proffers two justifications for the delay in paying Plaintiff's claim.  Defendant asserts that the Parties were engaged in a "pocket book dispute" over the value of Plaintiff's claim and, once Plaintiff submitted additional medical records in August 2012, it became necessary to investigate further, leading to additional delay.

Having reviewed the parties' submissions and the record as a whole, the Court is of the opinion that the facts of this case reveal an arguable basis for Defendant's delay in paying Plaintiff's claim.  The twenty five months between the time Plaintiff exhausted his administrative remedies, which triggered Defendant's obligation to investigate, and the date Defendant received Dr. Savoie's report calling into question the necessity of Plaintiff's subsequent shoulder surgery, can be divided into two intervals.

1. <u>June 17, 2011 through August 16, 2012</u>

The record supports the conclusion that the first interval, from June 17, 2011, to August 16, 2012, reflects a prompt investigation leading to nothing more than a "pocket book dispute," which does not support a bad faith claim. Upon receipt of Plaintiff's notice that he exhausted his administrative remedies, Defendant prepared an IER on July 7, 2011, based on medical records submitted by Plaintiff, and established a settlement range between $37,000 and $47,000. At the time of this evaluation, the medical records indicated Plaintiff's two primary complaints involved his left shoulder and lower back. Dr. Noblin had already concluded on October 1, 2010, that Plaintiff's shoulder had reached MMI and had assigned Plaintiff 2% permanent partial impairment to his upper extremity and 1% impairment to his entire body. On December 8, 2010, Dr. Winters had concluded that the nerves in Plaintiff's back were healing and he did not recommend surgery. On March 9, 2011, Dr. Winters had noted Plaintiff was doing "really fairly well" and needed only follow-up as needed. In addition to these medical records, Plaintiff's settlement brochure submitted on May 19, 2011, reflected Plaintiff's estimate of his out of pocket damages to be $17,857.52, while he estimated his "special damages" to be $13,871.02, for a total damages estimate of $31,728.54. Defendant, with this information before it, offered $37,000 to settle Plaintiff's UM claim on July 8, 2011.

Over the ensuing thirteen months, the parties engaged in a "pocket book" dispute in which Plaintiff refused to accept anything less than policy limits even after Defendant made a second offer of $45,000. When it appeared to Defendant

14

that the parties were at an impasse, Defendant made an unconditional tender of $37,000 to Plaintiff and specifically informed Plaintiff that the claim remained open.  Once the tender was made, the parties then engaged in a dispute over the sufficiency of the tender, Plaintiff claiming he was entitled to an additional $13,000 based upon a purported $50,000 settlement offer Defendant denied making.

The parties' communications throughout this time period make clear that they were engaged in a "pocket book dispute" over the value of Plaintiff's claim and the value of Defendant's unconditional tender.  The Court cannot conclude this "pocket book dispute" gives rise to a claim for bad faith denial.  *See Evangelista*, 726 F. Supp. at 1060 (dispute rested solely on sufficiency of settlement offer made after a reasonable evaluation of the insured's medical records and thus parties were engaged in a "legitimate pocketbook dispute" precluding the imposition of punitive damages); *Dedeaux v. State Farm Mut. Auto. Ins. Co.*, No. 1:11-cv-372-HSO-RHW, 2013 WL 318727, *6 (S.D. Miss. Jan. 28, 2013) (where insured made multiple demands for policy limits but insurer consistently maintained that, based on the information and documentation before it, the insured was not entitled to policy limits, the parties were in a legitimate pocketbook dispute precluding bad faith claim); *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 138-39 (Miss. 1998) (concluding insurer was in the midst of a pocketbook dispute short of an independent tort where insured claimed she was entitled to $5,000 in medical payments but insurer claimed that only $1,000 were due and despite the fact insurer could have but did not make an unconditional tender of the $1,000).

15

2. <u>August 17, 2012, through July 3, 2013</u>

The second interval, August 17, 2012, through July 3, 2013, began with Plaintiff submitting new medical records following his June 1, 2012, visit to Dr. Noblin.  In those records, Dr. Noblin, who twenty months earlier had found Plaintiff to be at MMI, concluded Plaintiff would need shoulder surgery and attributed this to the automobile accident.   Upon receiving this information, Defendant's internal records indicate that by September 6, 2012, Defendant began to question the mechanics and causation of Plaintiff's shoulder injury.  Defendant's ensuing investigation included attempts to obtain an examination under oath from Plaintiff and a medical authorization, efforts to procure medical records pertaining to Plaintiff's medical history dating back to 1999, and the retention of a medical doctor to review Plaintiff's medical records both before and after the automobile accident to determine whether the shoulder surgery could be considered related to the accident. Based on these undisputed facts, the Court is of the opinion that Defendant's investigation of the need for shoulder surgery constituted an arguable reason for delaying payment from August 17, 2012, when Defendant first received notice of Dr. Noblin's new recommendation for surgery, through July 3, 2013, when Plaintiff obtained Dr. Savoie's report concluding that the shoulder surgery could not be related to the automobile accident. *See Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1399 (5th Cir. 1986).

*Tutor* is instructive in this matter.  That case involved a contract of insurance covering a log skidder that was allegedly destroyed by fire. *Id*. at 1395-96.  The

insurer sent a claim investigator and heavy equipment appraiser to examine the skidder. *Id.* The appraiser prepared a report estimating that the skidder was worth $44,333 at the time of loss. *Id.* After evaluating several questionable circumstances surrounding the loss, the insurer's investigator recommended that the insured's claim be paid. *Id.* The insurer offered $43,333 to settle the claim, which represented the insurer's appraisal value minus the $1,000 deductible. *Id.* The insured rejected this offer, claiming that the actual value of the skidder at the time of loss was $55,000 and that he would not accept anything less than $54,333, which represented the actual cash value at $55,000, plus interest and minus the $1,000 deductible. *Id.* Upon receipt of this information, the insurer reappraised the skidder at between $50,000 and $52,000, but by that time the insured had already filed a lawsuit alleging bad faith. *Id.* After the jury returned a verdict in the insured's favor on the bad faith claim and the trial court denied the insurer's post-trial motion for judgment as a matter of law, the insurer appealed. *Id.* at 1397.

The Fifth Circuit concluded judgment should have been entered in the insurer's favor on the bad faith claim and reversed. *Id.* at 1399. The Fifth Circuit noted that the Mississippi Supreme Court has concluded that an award of punitive damages is improper when an insurer legitimately disputes the amount due under a policy. *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Roberts*, 379 So. 2d 321, 322 (Miss. 1980)). The Court of Appeals observed that the case "initially involved a reasonable inquiry into the validity of the claim and a subsequent good faith dispute over the cash value of the log skidder." *Id.* The insurer offered $43,333 to

17

settle the claim based on the appraisal information then available to the insurer. *Id*. Once the insured "submitted an alternative appraisal amount, [the insurer] took immediate steps to have the skidder reappraised[,]" but the insured had already filed suit asserting bad faith stemming from the delay in resolving the claim. *Id*. The Fifth Circuit concluded that these facts did not rise to the level of an independent tort, and there was no jury question on the issue of punitive damages. *Id*.

As in *Tutor*, the undisputed facts before the Court do not rise to the level of an independent tort, and Plaintiff cannot establish a claim for punitive damages as a matter of law. Leading up to August 17, 2012, the parties were involved in a legitimate dispute over the value Plaintiff's claim. Plaintiff provided additional information about his medical condition on August 17, 2012, and, similar to the insurer in *Tutor*, Defendant investigated this new information. After reviewing Dr. Noblin's conclusion that Plaintiff required shoulder surgery and that this surgery was related to the automobile accident, Defendant attempted to obtain an examination under oath. Plaintiff, however, had already filed suit asserting bad faith. Defendant has continued to investigate the claim within the context of this Court's procedural rules,[2] and its investigation has culminated with a report from Dr. Savoie concluding that Plaintiff's shoulder surgery could not be related to the automobile accident. The Court is of the opinion that these facts do not rise to the

---

[2] Local Rule 26(a)(4) and Federal Rule of Civil Procedure 26(d) and (f), when taken together, preclude parties from conducting discovery before the parties' Rule 26(f) conference.

level of an independent tort and Defendant is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages.[3]

III.   CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has proffered insufficient evidence that he owned the $45,000 offered by Defendant in an attempt to settle Plaintiff's UM claim.  As such, Plaintiff has not established a requisite element for a claim of conversion under Mississippi law.  The Court further concludes that Plaintiff has not produced sufficient summary judgment evidence that Defendant lacked an arguable reason for delaying payment of his UM claim. Consequently, Plaintiff cannot support an element necessary to support a bad faith claim for punitive damages.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion for Partial Summary Judgment [65] filed by Defendant State Farm Mutual Automobile Insurance Company on August 15, 2013, is **GRANTED**, and Plaintiff Daniel F. Dey's claims for conversion and bad faith/punitive damages against Defendant are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 30th day of December, 2013.

_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

---

[3] Once Defendant received and considered Dr. Savoie's report, Defendant's reliance on Dr. Savoie's opinions and conclusions provides an arguable basis for the delay in paying Plaintiff's claim.  *See Reece v. State Farm Fire & Cas. Co.*, 684 F. Supp. 140, 145-46 (N.D. Miss. 1987) (insurer's reliance on expert's opinion that fire which destroyed insureds' home was of incendiary origin created an arguable basis to deny coverage under fire insurance policy and precluded insureds' claim for punitive damages based on bad faith denial).

19